Unified Judicial System

 

 
 David Brown Eyes a/k/a David Brown Eyes Hostrawer and Jonette Brown Eyes a/k/a Jonette Burndine
Plaintiffs and Appellants v.
South Dakota Department of Social Services et al
Defendants and Appellees [2001 SD 81]
South Dakota Supreme Court
Appeal from the Circuit Court of The Seventh Judicial Circuit
Pennington County, South Dakota
Hon. Thomas L. Trimble, Judge
Rena M Atchison of Langley-Atchison Law Office Rapid City, South Dakota
Attorneys for plaintiffs and appellants
 
J. Crisman Palmer and Sarah Hirsch Wittmuss Gunderson, Palmer, Goodsell & Nelson Rapid City, South Dakota
Attorneys for defendants and appellees
 
Considered on Briefs March 19, 2001
Opinion Filed 6/27/2001
#21668
 
GORS, Circuit Judge
 
[Â¶1.] David and Jonette Brown Eyes (Plaintiffs) appeal a summary judgment in favor of the Department of Social Services (Department), Department Secretary James Ellenbecker (Ellenbecker), Department District Manager Dennis Bendt (Bendt) and Social Workers Linda Anderson (Anderson), Beverly Lafferty (Lafferty) and JoAnna Mitchell (Mitchell).  We affirm.
FACTS
[Â¶2.] S.V., born in 1990, and T.V., born in 1991, were Indian children affiliated with the Ogalala Sioux Tribe.  Mother was killed in a car accident and Father was in prison for an unrelated crime against Mother.  The children were adjudicated abused or neglected with the final order terminating parental rights entered on April 4, 1995.  Father appealed.  More than a year later, on April 26, 1996, the Department placed S.V. and T.V. in foster care for eventual adoption by Plaintiffs in Aurora, Colorado.  Four days later, on April 30, 1996, this Court remanded the appeal to the juvenile court to hold an evidentiary hearing to consider whether the tribal court had exclusive jurisdiction or whether concurrent state and tribal jurisdiction existed.  Plaintiffs learned of the jurisdiction problem on June 4-5, 1996, when they attended the juvenile court hearing on remand.  On June 14, 1996, the juvenile court determined that the tribal court had exclusive jurisdiction.  The children were removed from Plaintiffsâ home in late July 1996.  The children had been in Plaintiffsâ home for about three months when they were removed.
[Â¶3.] In June 1997, Plaintiffs sued Department, Ellenbecker, Bendt, Anderson, Lafferty and Mitchell for negligence, reckless and negligent performance of their duties and reckless and negligent misrepresentation.  The complaint was later amended to allege bad faith and intentional misrepresentation.  Plaintiffs sought reimbursement for actual expenses in excess of $31,000 and for unspecified damages for emotional distress, anxiety and harm.
[Â¶4.] The Department and the named individuals moved for summary judgment, which the trial court granted, based on immunity of the defendants and no breach of contract.
STANDARD OF REVIEW
[Â¶5.] The standard of review of a summary judgment is whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law.  The evidence is viewed most favorably to the nonmoving party and reasonable doubts are resolved against the moving party.  The nonmoving party must present specific facts which show that a genuine, material issue for trial exists.  On appeal, we determine only whether a genuine issue of material fact exists and whether the law was applied correctly.  If there is any basis which supports the ruling of the trial court, we affirm.  Casazza v. State, 2000 SD 120, Â¶8, 616 NW2d 872, 874 (quoting Dakota Cheese, Inc. v. Ford, 1999 SD 147, Â¶15, 603 NW2d 73, 76).  Summary judgment should be granted if the pleadings, depositions, interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and show that the moving party is entitled to judgment as a matter of law.  Julson v. Federated Mut. Ins. Co., 1997 SD 43, Â¶5, 562 NW2d 117, 119 (quoting Ford v. Moore, 1996 SD 112, Â¶7, 552 NW2d 850, 852); SDCL 15-6-56(c).  Finally, summary judgment will only be affirmed if there are no genuine issues of material fact and the legal questions have been decided correctly.  Ford, 1996 SD 112 at Â¶7, 552 NW2d at 852; Bego v. Gordon, 407 NW2d 801, 804 (SD 1987).
[Â¶6.] Sovereign immunity is a question of law and review of the issue is de novo.  Hansen v. South Dakota Dept. of Transp., 1998 SD 109, Â¶7, 584 NW2d 881, 883.  Summary judgment is appropriate for sovereign immunity claims.  Casazza, 2000 SD 120 at Â¶8, 616 NW2d at 874.
Tort Claims
 
Sovereign Immunity
 
South Dakota Department of Social Services
 
[Â¶7.] The State of South Dakota has sovereign immunity from suit.  SD Const art III, Â§27; Wilson v. Hogan, 473 NW2d 492, 494 (SD 1991).  The Department of Social Services is an entity of the State.  SD Const art IV, Â§9; SDCL 1-32-2(3); 1-36; and 28-1-1.  The State may waive sovereign immunity and consent to be sued.  Hansen, 1998 SD 109 at Â¶Â¶9-12, 584 NW2d at 883-84.  Sovereign immunity may be waived by purchasing liability insurance or by risk-sharing under SDCL 21-32-16 or 21-32A-2.  The State has not consented to be sued, purchased liability insurance or chosen to be covered by risk-sharing.  Therefore, the State has not waived sovereign immunity in this case.  The Department was properly granted summary judgment on Plaintiffsâ tort claims based on sovereign immunity.  Wilson, 473 NW2d at 494.
Secretary Ellenbecker and District Manager Bendt
[Â¶8.] A state employee acting within the scope of the employeeâs duty may also be immune from suit.  â[T]he governing acts of the state, its agencies, other public entities, and their employees cannot be attacked in court without the stateâs consent.â  Hansen, 1998 SD 109 at Â¶9, 584 NW2d at 883; See also SD Const art III, Â§ 27; Casazza, 2000 SD 120 at Â¶11, 616 NW2d at 874-75; Wilson, 473 NW2d at 494; Blue Fox Bar, Inc. v. City of Yankton, 424 NW2d 915, 917 (SD 1988).  Whether a state employee who is sued in an individual capacity is entitled to immunity depends upon âthe function performed by the employee.â  Kruger v. Wilson, 325 NW2d 851, 853 (SD 1982); High-Grade Oil Co., Inc. v. Sommer, 295 NW2d 736 (SD 1980); Sioux Falls Const. Co. v. City of Sioux Falls, 297 NW2d 454, 458 (SD 1980).
[Â¶9.] To be immune from suit, the employeeâs function must be discretionary, rather than ministerial.  The following factors should be considered to determine whether a function is discretionary or ministerial:
1)                  The nature and importance of the function the officer is performing;
 
2)                  The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of the coordinate branch of government;
 
3)                  The extent to which the imposition of liability would impair the free exercise of his discretion by the officer;
 
4)                  The extent to which the ultimate financial responsibility will fall on the officer;
 
5)                  The likelihood that harm will result to members of the public if the action is taken;
 
6)                  The nature and seriousness of the type of harm that may be produced;
 
7)                  The availability to the injured party of other remedies and other forms of relief.
 
Kyllo v. Panzer, 535 NW2d 896, 902 (SD 1995); National Bank of South Dakota v. Leir, 325 NW2d 845, 848 (SD 1982); Restatement (Second) of Torts Â§ 895D comt f (1979).
[Â¶10.] A state employee who fails to perform a ministerial duty may be liable for the proximate results.  Leir, 325 NW2d at 848.  Ministerial acts are:
absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law.  A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result.  It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.  In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial.  If there is a readily ascertainable standard by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception.
 
Hansen, 1998 SD 109 at Â¶23, 584 NW2d at 886 (emphasis in original) (quoting 57 AmJur2d Municipal, County, School & State Tort Liability Â§ 120 (1988)).
[Â¶11.] Plaintiffs point to nothing to show that Ellenbecker or Bendt had anything to do with the case.  Plaintiffs cite nothing in the record to show that the supervisory functions of Ellenbecker or Bendt are ministerial rather than discretionary.  At the summary judgment hearing, Plaintiffs' counsel admitted that Ellenbeckerâs duties were discretionary.  Hansen, 1998 SD 109 at Â¶22, 584 NW2d at 886.  Mere conclusions are not enough.  Plaintiffs also fail to provide authority for or to define the supervisory standards they claim to be ministerial.  Casazza, 2000 SD 120 at Â¶15, 616 NW2d at 876.  Plaintiffs have failed to provide specific facts which show that a genuine and material issue of fact exists on sovereign immunity as required under SDCL 15-6-56(e).  Dakota Cheese, 1999 SD 147 at Â¶15, 603 NW2d at 76.  Therefore, Ellenbecker and Bendt were properly granted summary judgment on Plaintiffsâ tort claims based on sovereign immunity.
Social Workers Anderson, Lafferty and Mitchell
 
[Â¶12.] In Leir, 325 NW2d at 849-50, we held that the placement and follow-up of children in foster care by social workers is a ministerial function.  Even though there is some discretion involved in a literal sense, social workers do not make policy decisions involving foster care placement.  The criteria and standards are already established.  Following the standards is a routine ministerial function.  We are not persuaded to either abandon or distinguish Leir.  Therefore, the social workers are not entitled to summary judgment based on sovereign immunity on Plaintiffsâ tort claims.
Good Faith Immunity
[Â¶13.] A social worker may be entitled to good faith immunity during the performance of certain ministerial functions.  SDCL 26-8A-14 provides the following:
Any person or party participating in good faith in the making of a report or the submitting of copies of medical examination, treatment or hospitalization records pursuant to Â§Â§ 26-8A-3 to 26-8A-8, inclusive, or pursuant to any other provisions of this chapter, is immune from any liability, civil or criminal, that might otherwise be incurred or imposed, and has the same immunity for participation in any judicial proceeding resulting from the report.  Immunity also extends in the same manner to persons requesting the taking of photographs and X rays pursuant to Â§ 26-8A-16, to persons taking the photographs and X rays, to child protection teams established by the secretary of social services, to public officials or employees involved in the investigation and treatment of child abuse or neglect or making a temporary placement of the child pursuant to this chapter, or to any person who in good faith cooperates with a child protection team or the department of social services in investigation, placement or a treatment plan.  The provisions of this section or any other section granting or allowing the grant of immunity do not extend to any person alleged to have committed an act or acts of child abuse or neglect. (emphasis added).
 
In B.W. v. Meade County, 534 NW2d 595, 597-98 (SD 1995), this Court held that good faith immunity applied to social workers investigating child abuse and neglect. In Cotton v. Stange, 1998 SD 81, Â¶13, 582 NW2d 25, 29, this Court held that good faith immunity applied to social workers supervising children in foster care.  Since the pre-adoptive placement of S.V. and T.V. with Plaintiffs was temporary until finalized, SDCL 26-8A-29, we now hold that good faith immunity applies to social workers making placement for foster care and eventual adoption.
[Â¶14.] Based on our review of the entire record in a light most favorable to Plaintiffs, we fail to find any evidence that the social workers acted for some improper purpose.  Although the amended complaint alleges bad faith, the record does not support the allegation that the social workers withheld information or deliberately misrepresented facts to Plaintiffs.
[Â¶15.] The agreement Plaintiffs signed with the Department clearly stated that placement was pending the clarification of the legal termination of Fatherâs parental rights.  Plaintiffs knew about Fatherâs appeal.  They knew the children were a âlegal riskâ placement.  The agreement provided they would legally adopt the children âwhen the legal risk is removed.â  The âOut of Home Care Service Agreementâ noted âfoster care/adoptionâ was the least restrictive alternative due to the appeal regarding termination of parental rights and further provided that Plaintiffs would adopt when and if the children became legally free.  Plaintiffs admitted they knew that Fatherâs rights needed to be terminated and there was a chance the children would be removed from their home.  Only thirty-five days passed between the remand on April 30, 1996, and the hearing on June 4-5, 1996, after which Plaintiffs admittedly knew about the jurisdiction issue.  If the social workers did not inform Plaintiffs as quickly or as fully as they wished about the nature and effect of the jurisdictional remand, it was, at most, negligence, which is not bad faith.  B.W. v. Meade County, 534 NW2d at 598; Cotton, 1998 SD 81 at Â¶11, 582 NW2d at 29.
[Â¶16.] In their depositions, Plaintiffs agreed that the social workers were trying to keep the children placed in Plaintiffsâ home, that the social workers were working in the childrenâs best interests and that none of the social workers intentionally did anything to prevent the adoption.  Legal complications and circumstances beyond the control of the social workers and Plaintiffs prevented the adoption.  There is no showing of improper motive or dishonesty and no showing of bad faith.  Therefore, Anderson, Lafferty and Mitchell were properly granted summary judgment based on good faith immunity on Plaintiffsâ tort claims.
Contract Claims
[Â¶17.] Plaintiffs also claimed damages for breach of contract.  By entering into a contract, the State consented to be sued on contractual claims.  Blue Fox Bar, 424 NW2d at 917-18.
[Â¶18.] Plaintiffs had a contract with the Department which provided for reimbursement of $8.59 per child per day.  The agreement also provided that the parents would not incur any expenditures on behalf of the children without prior authorization from the Department.  Plaintiffs had the children approximately ninety days and were paid the per diem under the contract.  Yet, they claimed extensive consequential damages for breach of contract for expenses incurred in preparing to adopt the children.  Plaintiffs sought reimbursement in excess of $31,000 including expenses for new pajamas for mother, furniture for the childrenâs room, a pager, a new freezer, toys and $500 for two comforters for the childrenâs beds.  Plaintiffs admitted that there was no agreement that they would be reimbursed in addition to the per diem if they did not adopt the children.
[Â¶19.] Plaintiffs had the opportunity to read the âFost/Adopt [sic] Placement Agreementâ and the âOut of Home Care Service Agreementâ but did not.  Their conclusion that they had to take the contracts or leave them was not supported by any evidence in opposition to summary judgment.  Plaintiffs were educated and experienced and immersed themselves in the adoption process.  They asked no questions when they signed the agreements and made no effort to negotiate any other terms even though they knew these contracts governed the financial arrangements between the Department and themselves.  Nothing indicated that this was a âtake it or leave itâ situation other than Plaintiffs' unsupported conclusion to that effect.  Under the facts in this case, these were not contracts of adhesion.  Rozeboom v. Northwestern Bell Telephone Co., 358 NW2d 241 (SD 1984). Plaintiffs were limited to the per child per day payment paid under the contract and the trial court properly granted summary judgment on the contract claim.
CONCLUSION
[Â¶20.] The summary judgment in favor of the Department of Social Services, Secretary Ellenbecker, District Director Bendt and Social Workers Anderson, Lafferty and Mitchell is affirmed.
[Â¶21.] MILLER, Chief Justice, and SABERS, AMUNDSON and GILBERTSON, Justices, concur.
[Â¶22.] GORS, Circuit Judge, for KONENKAMP, Justice, disqualified.